FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 02, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TATIANA A.,[1] | No. 2:19-cv-00349-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing,

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

4  The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

6  A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11 reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12 (quotation and citation omitted).  Stated differently, substantial evidence equates to

13 "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14 citation omitted).  In determining whether the standard has been satisfied, a

15 reviewing court must consider the entire record as a whole rather than searching

16 for supporting evidence in isolation. *Id.*

17 In reviewing a denial of benefits, a district court may not substitute its

18 judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20 rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

1   supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2   F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3   ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5   *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7   *Sanders*, 556 U.S. 396, 409-10 (2009).

8                          **FIVE-STEP EVALUATION PROCESS**

9         A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do his previous work[,] but cannot,

16  considering his age, education, and work experience, engage in any other kind of

17  substantial gainful work which exists in the national economy."  42 U.S.C. §

18  1382c(a)(3)(B).

19        The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On June 23, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of June 1, 2016.[2] Tr. 70, 231-32. The application was denied initially, and on reconsideration. Tr. 102-10; Tr. 114-20. Plaintiff appeared before an administrative law judge (ALJ) on May 14, 2018. Tr. 39-69. On July 26, 2018, the ALJ denied Plaintiff's claim. Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 23, 2016. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: double jointed hips; sacroiliac joint dysfunction; ligament tightness and muscle spasm; bilateral pars interarticularis defects at L5 with only very subtle anterolisthesis of

_____

[2] At the hearing, Plaintiff agreed to amend her alleged onset date to June 23, 2016, Tr. 46, however the ALJ's decision refers to June 1, 2016 as the alleged onset date.

ORDER - 6

L5 on S1; right knee patellofemoral syndrome; polyarthralgias; migraine

headaches; asthma; obstructive sleep apnea; chronic fatigue/pain; morbid obesity;

depression; and anxiety.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 19-21.  The ALJ then concluded that Plaintiff has the RFC to

perform light work with the following limitations:

> [Plaintiff] has the ability to lift and/or carry up to 20 pounds
> occasionally (up to 1/3 of [the] workday), and 10 pounds frequently
> (up to 2/3 of the workday).  [Plaintiff] has the ability to sit up to 6
> hours, and stand and/or walk up to 2 hours.  [Plaintiff] has the
> unlimited ability to push and/or pull, other than as stated for lift
> carry, with left lower extremity limited to occasionally.  Regarding
> postural abilities, [Plaintiff] has the ability to occasionally stoop (i.e., bend at
> the waist); frequently climb ramps or stairs, or balance, but should
> never kneel, crouch (i.e., bend at the knees), crawl or climb ladders,
> ropes or scaffolds.  Regarding use of hands, [Plaintiff] has the
> unlimited ability to handle, finger or feel.  [Plaintiff] has the unlimited
> ability to reach in all directions, including overhead.  [Plaintiff] has
> the unlimited ability to see, hear and communicate.  Regarding the
> environment, [Plaintiff] has no limitations regarding exposure to
> extreme cold, extreme heat or noise; should avoid concentrated
> exposure to wetness, humidity, vibration and hazards, such as
> dangerous machinery and unprotected heights; and should avoid even
> moderate exposure to fumes, odors, dust, gases or poor ventilation.
> Regarding mental abilities, [Plaintiff] has the ability to understand,
> remember or apply information that is simple, routine, and repetitive,
> commensurate with 1 to 3 step tasks.  Regarding interaction with
> others, [Plaintiff] would work best in an environment in proximity to,
> but not close cooperation, with co-workers and supervisors, and
> should work in an environment away from the public.  Regarding the
> ability to concentrate, persist or maintain pace, [Plaintiff] has the
> ability, with legally required breaks, to focus attention on work

activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without needing more than the allotted number or length of rest periods. Regarding the ability to adapt or manage, [Plaintiff] would work best in an environment that is routine and predictable, but does not have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

Tr. 21-22.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 31. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small parts assembler, collator operator, and marker II. Tr. 29. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On August 26, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

ORDER - 8

2.  Whether the ALJ conducted a proper step-three analysis;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.  Whether the ALJ properly developed the record.

ECF No. 14 at 2.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in considering the opinions of consultative examiner Jenifer Schultz, Ph.D., non-examining medical expert Stephen Rubin, Ph.D., and State agency medical consultants Michael Brown, Ph.D., and John Gilbert, Ph.D.  ECF No. 14 at 4-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

ORDER - 9

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the

record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

*1. Dr. Schultz*

In September 2016, Dr. Schultz conducted a psychological consultative

examination and diagnosed Plaintiff with PTSD with panic attacks, and chronic,

moderate major depressive disorder. Tr. 553. Dr. Schultz opined Plaintiff has a

guarded prognosis, she is not capable of managing funds, she is capable of

ORDER - 10

reasoning and understanding "to some degree" but appears to have some cognitive

difficulty, she has interpersonal challenges which would affect her ability to work

with others and be consistent in attendance to work, and her impaired

concentration impacts her ability to learn. Tr. 553-54. The ALJ gave Dr. Schultz's

opinion little weight. Tr. 28. As Dr. Schultz's opinion is contradicted by the

opinions of Dr. Brown, Tr. 80-81, and Dr. Gilbert, Tr. 96-98, the ALJ was required

to give specific and legitimate reasons, supported by substantial evidence, to reject

Dr. Schultz's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found the opinion is overly reliant on Plaintiff's self-report.

Tr. 31. A medical opinion may be rejected by the ALJ if it was inadequately

supported by medical findings and based too heavily on the claimant's properly

discounted complaints. *Bray*, 554 F.3d at 1228; *Tonapetyan v. Halter*, 242 F.3d

1144, 1149 (9th Cir. 2001). The ALJ noted Dr. Schultz opined Plaintiff has some

cognitive difficulties based on Plaintiff's self-report of having previously had an

individualized education plan, though Dr. Schultz did not review Plaintiff's

educational records. Tr. 31. Dr. Schultz also opined Plaintiff has social

limitations, and in the paragraph explaining Plaintiff's social limitations, Dr.

Schultz noted Plaintiff reported interpersonal challenges and a history of not

having friends. Tr. 554. Dr. Schultz did not cite to any objective evidence of

ORDER - 11

1   either cognitive or social limitations.  This was a specific and legitimate reason to

2   reject Dr. Schultz's opinion.

3          Second, the ALJ found Dr. Schultz's opinion is internally inconsistent.  Tr.

4   31.  Relevant factors to evaluating any medical opinion include the amount of

5   relevant evidence that supports the opinion, the quality of the explanation provided

6   in the opinion, and the consistency of the medical opinion with the record as a

7   whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*,

8   495 F.3d 625, 631 (9th Cir. 2007).  Moreover, a physician's opinion may be

9   rejected if it is unsupported by the physician's treatment notes.  *See Connett v.*

10  *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ noted that while Dr.

11  Schultz opined Plaintiff had impaired concentration, Plaintiff performed

12  concentration tasks reasonably well on examination.  Tr. 31.  Plaintiff could not

13  perform serial sevens and made an error on serial threes.  Tr. 552.  However, she

14  spelled "world" correctly backward and forward and was able to follow a three-

15  step command.  *Id.*  Here, Plaintiff's performance on the mental status examination

16  does not demonstrate she is more restricted than already accounted for in the RFC.

17  On examination, Plaintiff had a flat affect and reported not feeling anything, had

18  abnormal abstract thinking, and could not complete serial threes or serial sevens

19  correctly, but spelled "world" correctly forward and backward, followed a three-

20  step command, she was cooperative, and had good grooming, normal speech,

ORDER - 12

1    orientation, memory, fund of knowledge.  Tr. 552-53.  The ALJ accounted for the

2    limitations demonstrated in the examination by limiting Plaintiff to a routine and

3    predictable environment that does not require her to independently evaluate her

4    work performance or deal with hazards.  *See* Tr. 21-22.  Moreover, while Plaintiff

5    demonstrated some abnormal results on testing, any error in finding Dr. Schultz's

6    opinion was internally inconsistent is harmless because the ALJ gave other specific

7    and legitimate reasons, supported by substantial evidence, to reject the opinion.

8    *See Molina,* 674 F.3d at 1115

9         Third, the ALJ found Dr. Schutz's opinion is inconsistent with the

10   longitudinal record.  Tr. 31.  An ALJ may discredit physicians' opinions that are

11   unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359

12   F.3d 1190, 1195 (9th Cir. 2004).  The ALJ found Dr. Schultz's opinion was

13   inconsistent with the record as a whole, particularly Plaintiff's lack of mental

14   health treatment.  Tr. 31.  Plaintiff argues she has received mental health treatment

15   since June 2015 onward.  ECF No. 14 at 9.  However, while Plaintiff has had

16   instances when she received counseling or medication management for a period of

17   time, Plaintiff has had longer periods when she did not receive treatment.

18        In June 2015, Plaintiff was seen for a single visit during which she reported

19   depression and anxiety and she was started on sertraline.  Tr. 24, 371.  In August

20   2016, Plaintiff was seen in the emergency department where she reported anxiety,

ORDER - 13

Tr. 519, and she was seen by her primary care physician, to whom she reported she

had anxiety; Plaintiff was prescribed Buspirone but declined a counseling referral,

Tr. 24 (citing Tr. 531).  Later that month, Plaintiff reported her mood swings were

worsening, Tr. 525, and Plaintiff then was seen for an initial mental health

assessment, Tr. 25 (citing Tr. 536).  Plaintiff's mental health records show she only

received mental health counseling from August 2016 through October 2016.  Tr.

564-92.  In July 2017, Plaintiff's primary care provider started her on Paxil, and

the next month Plaintiff reported Paxil was working well for her symptoms.  Tr. 26

(citing Tr. 711).  In November 2017, Plaintiff reported she had weaned herself off

her medications and reported her depression was stable.  Tr. 26 (citing Tr. 506).

The next month, she was seen in the emergency department for a suicide attempt

after a breakup.  Tr. 26 (citing Tr. 629).  She was then seen for follow-up

appointments during which she was started on medication, Tr. 26 (citing Tr. 697,

699), and Plaintiff was encouraged to follow-up on the referral to Frontier

Behavioral Health, Tr. 26 (citing Tr. 692), but there is no indication Plaintiff ever

pursued the referral.  Plaintiff also reported improvement in her symptoms with

medication, Tr. 27 (citing Tr. 519-24, 704).  The ALJ's conclusion that the

longitudinal record did not support Dr. Schultz's opinions is supported by

substantial evidence in the record, and constitutes a specific and legitimate reason

to reject Dr. Schultz's opinion.  The ALJ did not err in evaluating the opinion.

ORDER - 14

2. *Dr. Rubin*

In May 2018, Dr. Rubin, a non-examining medical expert, testified at Plaintiff's hearing regarding Plaintiff's functioning. Tr. 48-53. Dr. Rubin found Plaintiff has a depressive disorder and anxiety disorder. Tr. 50. Dr. Rubin opined Plaintiff could not perform complex tasks that require a lot of training, memory and capacity well; she could not handle a lot of stress or fast-paced work well; she should have limited contact with the public; and she should try to work in a routine slow-paced environment. Tr. 51. When asked if he agreed with Dr. Schultz's opinion that Plaintiff may have issues working with others and consistently attending work, Dr. Rubin stated Plaintiff may have issues with attendance, which may be related to motivation, but Dr. Schultz was guessing there might be some issues with Plaintiff attending work as well. Tr. 51. He stated he thinks Plaintiff should try to work. Tr. 52. He also opined Plaintiff has "some" concentration limitations. Tr. 53. The ALJ gave Dr. Rubin's opinion great weight. Tr. 28. As Dr. Rubin is a non-examining source, the ALJ must consider the opinion and whether it is consistent with other independent evidence in the record. *See* 20 C.F.R. § 416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

Plaintiff argues the ALJ improperly rejected Dr. Rubin's opinion because she gave the opinion less than full weight, did not incorporate all of the limitations

ORDER - 15

1    into the RFC, and did not provide an explanation for the rejection.  ECF No. 14 at

2    6.  Plaintiff contends Dr. Rubin gave a disabling opinion, as he opined Plaintiff

3    might have consistency issues with work attendance, and the vocational expert

4    testified that an individual who misses work more than once per month is not

5    competitively employable.  *Id.*  However, Plaintiff's argument is inconsistent with

6    the record.

7         Dr. Rubin opined Plaintiff may have some motivation issues with working,

8    and stated he agreed Plaintiff might have attendance issues but also stated Dr.

9    Schultz was guessing Plaintiff "might" have difficulty consistently showing up for

10   work.  Tr. 51-52.  Dr. Rubin further stated Plaintiff should try to work, and he

11   thinks she could succeed at simple work with limited public contact.  *Id.*  When

12   asked to quantify Plaintiff's limitations such as with a percentage, Dr. Rubin

13   declined.  Tr. 53.  As such, Dr. Rubin did not give an opinion as to how frequently

14   Plaintiff would consistently miss work, if at all, nor did he opine that any of

15   Plaintiff's limitations would be work preclusive.  In fact, he opined Plaintiff should

16   work.  As the ALJ incorporated Dr. Rubin's opinion into the RFC, the ALJ did not

17   error in considering Dr. Rubin's opinion.

18        *3.  Dr. Brown and Dr. Gilbert*

19        In September 2016, Dr. Brown, a State agency psychological consultant,

20   found Plaintiff has an affective disorder and an anxiety disorder.  Tr. 77.  Dr.

ORDER - 16

1  Brown opined Plaintiff had no more than moderate limitations in any area of

2  functioning.  Tr. 80-81.  Dr. Brown stated, "[Plaintiff] retains the ability to engage

3  in at least two hours of work activity of an eight hour workday," she should avoid

4  working with the general public, and she is capable of adapting to simple changes.

5  Tr. 81.

6          In November 2016, Dr. Gilbert, a State agency psychological consultant,

7  also opined Plaintiff has no more than moderate limitations, Tr. 96-97, and opined

8  Plaintiff "would have occasional difficulties in maintaining attention,

9  concentration, pace & persistence" when symptomatic, but Plaintiff "remains

10  capable of simple tasks," she has reasonable concentration, persistence and pace,

11  can attend work within customary tolerances, work within a routine and complete a

12  normal workday/workweek; she is capable of work with limited social interactions

13  away from the general public and she may have occasional difficulty accepting

14  criticism or appropriately dealing with coworker conflict, but she can accept

15  instructions and maintain adequate hygiene; and she remains capable of adapting

16  within a work environment.  Tr. 97-98.  The ALJ gave Dr. Brown's and Dr.

17  Gilbert's opinions great weight.  Tr. 28.  As Dr. Brown and Dr. Gilbert are non-

18  examining sources, the ALJ must consider the opinions and whether they are

19  consistent with other independent evidence in the record.  *See* 20 C.F.R. §

20  416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

ORDER - 17

1    Plaintiff argues the ALJ improperly rejected Dr. Brown's and Dr. Gilbert's

2 opinions because she gave the opinions less than full weight, did not incorporate

3 all of the limitations into the RFC, and did not provide an explanation for the

4 rejection.  ECF No. 14 at 6.  Plaintiff contends Dr. Brown gave a disabling

5 opinion, as he opined Plaintiff can perform work activities for at least two hours

6 per day, which Plaintiff argues is equivalent to opining Plaintiff can only work

7 part-time, which would be a disabling limitation.  *Id.* at 5.  However, Plaintiff's

8 argument is inconsistent with the evidence because Dr. Brown stated Plaintiff is

9 capable of performing "at least" two hours of activities, he found Plaintiff had no

10 more than moderate limitations, Tr. 80-81, and found Plaintiff is not disabled, Tr.

11 83.  After reviewing the initial evidence and determination, Dr. Gilbert opined

12 Plaintiff was capable of completing a normal workday and workweek.  Tr. 97.  As

13 such, the ALJ incorporated Dr. Brown's opinion into the RFC and did not error in

14 her consideration of the opinion.

15    Next, Plaintiff argues Dr. Gilbert's opinion was disabling because he opined

16 Plaintiff would have occasional difficulties with concentration, persistence and

17 pace when symptomatic and she would have occasional difficulties accepting

18 criticism.  ECF No. 14 at 5.  Plaintiff argues the opinion is consistent with finding

19 Plaintiff would have the difficulties up to one-third of day, which would be

20 disabling due to the vocational expert's testimony that an individual can only be

ORDER - 18

1    off-task ten percent of the day.  *Id.* at 6.  This argument is also inconsistent with

2    the evidence.  While Dr. Gilbert opined Plaintiff would have occasional difficulties

3    with concentration, persistence and pace, he clarified such difficulties would only

4    occur while Plaintiff is symptomatic and gave no indication how frequently

5    Plaintiff is expected to be symptomatic.  Tr. 97.  However, Dr. Gilbert opined

6    Plaintiff is capable of sustaining competitive employment, indicating the

7    occasional difficulties would not rise to the level to prevent employment.  *Id.*

8    Where evidence is subject to more than one rational interpretation, the ALJ's

9    conclusion will be upheld. Burch, 400 F.3d at 679.  As such, the ALJ properly

10   incorporated Dr. Gilbert's opinion into the RFC and did not error in considering

11   the opinion.

12       **B. Step-Three**

13       Plaintiff contends the ALJ erred in finding Plaintiff's migraine headaches do

14   not equal Listing 11.02.  ECF No. 14 at 10-12.  At step three, the ALJ must

15   determine if a claimant's impairments meet or equal a listed impairment.  20

16   C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments "describes each of the

17   major body systems impairments [which are considered] severe enough to prevent

18   an individual from doing any gainful activity, regardless of his or her age,

19   education or work experience."  20 C.F.R. § 416.925.  "Listed impairments are

20   purposefully set at a high level of severity because 'the listings were designed to

ORDER - 19

operate as a presumption of disability that makes further inquiry unnecessary.' "

*Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

even considered." *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed

criteria for disability, she will be found to be disabled.  20 C.F.R. §

416.920(a)(4)(iii).

> "To *meet* a listed impairment, a claimant must establish that he or she meets

each characteristic of a listed impairment relevant to his or her claim." *Tackett,*

180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a

listed impairment, a claimant must establish symptoms, signs and laboratory

findings 'at least equal in severity and duration' to the characteristics of a relevant

listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting

20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from

multiple impairments and none of them individually meets or equals a listed

impairment, the collective symptoms, signs and laboratory findings of all of the

claimant's impairments will be evaluated to determine whether they meet or equal

the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099.

However, " '[m]edical equivalence must be based on medical findings,' " and

" '[a] generalized assertion of functional problems is not enough to establish

ORDER - 20

1    disability at step three.' "  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R.

2    § 416.926(a).

3         The claimant bears the burden of establishing her impairment (or

4    combination of impairments) meets or equals the criteria of a listed impairments.

5    *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

6    articulation of the reason(s) why the individual is or is not disabled at a later step in

7    the sequential evaluation process will provide rationale that is sufficient for a

8    subsequent reviewer or court to determine the basis for the finding about medical

9    equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at

10   *4 (effective March 27, 2017).

11        Here, the ALJ concluded that Plaintiff's impairments and combinations of

12   impairments did not meet or equal any listings.  Tr. 19.  The ALJ stated Plaintiff's

13   impairments did not meet or equal "Listing 11.00 (Neurological)" although 11.00

14   is not a listing but rather a category of listings.  *Id.*  The ALJ provided an

15   explanation as to why Plaintiff's impairments did not meet or equal the other

16   relevant listings but did not provide an explanation as to why Plaintiff's

17   impairments do not meet or equal a neurological listing, including Listing 11.02.

18   *Id.*

19        While Listing 11.02 addresses seizures, it is the most closely analogous

20   listing for migraines.  HALLEX DI 24505.015(B)(7)(B) (Ex. 2).  Listing 11.02

ORDER - 21

requires migraine headaches be "documented by detailed description of a typical [migraine headache], including all associated phenomena."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.  To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment.  *Id.*

Plaintiff has not met her burden in demonstrating her migraines are equal in severity to Listing 11.02.  Plaintiff alleges she has had headaches on an almost daily basis.  ECF No. 14 at 10 (citing Tr. 289, 536).  However, Plaintiff cites to her Disability Report and a counseling appointment where Plaintiff self-reported daily migraines.  At the counseling appointment, Plaintiff did not report taking any medications for her migraines.  Tr. 536.  Similarly, in the Disability Report, Plaintiff did not report any treatment for her migraines.  Tr. 291-93.  Plaintiff also cites to other records in support of the argument she had chronic headaches from August 2016 through December 2016, but the documents are either based entirely on Plaintiff's self-report during periods she was not seeking treatment for her headaches, Tr. 270 (Plaintiff's headache questionnaire); Tr. 289, 299 (Plaintiff's Disability Reports); or medical records from periods when Plaintiff was not seeking care for her headaches and was not taking medications for the reported headaches, Tr. 536, 544, 565, 647.

ORDER - 22

1    While migraines are occasionally listed in Plaintiff's past medical history or

2  problem list, Tr. 453, 565, there are minimal discussions of her migraine headaches

3  in the treatment records.  Medical records indicate Plaintiff consistently reported

4  not experiencing headaches.  Tr. 392, 456, 499, 629, 633.  Plaintiff reported at her

5  physical consultative examination that she went to an emergency room once

6  approximately 18 months prior to the examination due to her headaches and did

7  not report any further treatment.  Tr. 544.  The examiner diagnosed Plaintiff with a

8  "history of headaches consistent with muscle tension headaches" and stated the

9  prognosis was "good."  Tr. 547.  At an appointment for her sleep issues, Plaintiff

10  reported "occasional headaches."  Tr. 647.  There is no objective evidence that

11  Plaintiff has experienced weekly headaches, nor that Plaintiff has had any

12  treatment for her headaches.  As such, Plaintiff has not met her burden in

13  demonstrating she equals Listing 11.02 and any error in the ALJ's analysis at step

14  three would be harmless.  *See Molina,* 674 F.3d at 1115.

15  **C. Plaintiff's Symptom Claims**

16    Plaintiff faults the ALJ for failing to rely on reasons that were clear and

17  convincing in discrediting her symptom claims.  ECF No. 14 at 13-21.  An ALJ

18  engages in a two-step analysis to determine whether to discount a claimant's

19  testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

20  "First, the ALJ must determine whether there is objective medical evidence of an

ORDER - 23

1    underlying impairment which could reasonably be expected to produce the pain or

2    other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

3    "The claimant is not required to show that [the claimant's] impairment could

4    reasonably be expected to cause the severity of the symptom [the claimant] has

5    alleged; [the claimant] need only show that it could reasonably have caused some

6    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

7    Second, "[i]f the claimant meets the first test and there is no evidence of

8    malingering, the ALJ can only reject the claimant's testimony about the severity of

9    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

10   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

11   omitted).  General findings are insufficient; rather, the ALJ must identify what

12   symptom claims are being discounted and what evidence undermines these claims.

13   *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

14   Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

15   symptom claims)).  "The clear and convincing [evidence] standard is the most

16   demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

17   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

18   924 (9th Cir. 2002)).

19   Factors to be considered in evaluating the intensity, persistence, and limiting

20   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

ORDER - 24

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," to "determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

      The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr.  22, 26.

      *1. Inconsistent Objective Evidence*

      The ALJ found Plaintiff's symptom claims are inconsistent with the

objective evidence.  Tr. 26.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

ORDER - 25

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

However, the objective medical evidence is a relevant factor, along with the

medical source's information about the claimant's pain or other symptoms, in

determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

      The ALJ noted that while Plaintiff alleges difficulty moving due to hip pain,

the objective evidence is inconsistent with her allegation.  Tr. 26.  Imaging of

Plaintiff's hip showed no fracture, dislocation, subluxation or abnormal joint

spacing.  *Id.* (citing Tr. 691).  Plaintiff's physical examinations were also generally

normal.  Tr. 26 (citing Tr. 545-47, 614-44).  Plaintiff argues the objective evidence

is consistent with her reported symptoms and limitations.  ECF No. 14 at 15.

However, the ALJ reasonably found the objective evidence as a whole does not

support Plaintiff's allegations of disabling limitations due to her hip pain.  Further,

as discussed *supra,* the objective evidence also does not support Plaintiff's

allegations of daily headaches.  While Plaintiff alleges ongoing limitations due to

mental health symptoms, Plaintiff did not routinely seek mental health treatment,

and reported improvement with mental health medications before choosing to

wean herself off the medication.  Tr. 26 (citing Tr. 704, 706).  Plaintiff argues the

ALJ erred in finding her allegations of concentration issues inconsistent with Dr.

ORDER - 26

Schultz's examination, as the examination demonstrated abnormal findings.  ECF

No. 14 at 18.  While Plaintiff demonstrated some impairment in concentration on

testing, such as errors in serial sevens, she was able to spell "world" correctly

forward and backward and she was able to follow three-step instructions.   Tr. 552.

On this record, the ALJ reasonably concluded that the objective medical

evidence is not consistent with Plaintiff's complaints of disabling symptoms.  This

finding is supported by substantial evidence and was a clear and convincing

reason, coupled with the other reasons offered, to discount Plaintiff's symptoms

complaints

2. *Activities of Daily Living*

The ALJ found Plaintiff's symptom claims are inconsistent with her

activities of daily living.  Tr. 26-27.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.  The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

The ALJ noted Plaintiff was able to climb a flight of stairs at her home, drive for 60 to 90 minutes before needing a break to stretch, she could perform household chores, and care for multiple animals.  Tr. 27 (citing Tr. 545).  Plaintiff also reported being able to handle her personal care without assistance and lifting and carrying at least 50 pounds as that is the weight of the animal food she carries.  Tr. 545.  Plaintiff stated she spends most of her day caring for a dog, six rabbits, and four cats.  *Id.*  The ALJ also noted Plaintiff was engaged, able to use social media, and frequently attended medical appointments.  Tr. 27.  Plaintiff further reported spending her days taking her mother's fiancé to his appointments and providing care for her infant brother.  Tr. 556.  Plaintiff argues her activities were not inconsistent with her claims, as she later moved to a trailer with no stairs, rarely left her home, and had low motivation to complete tasks.  ECF No. 19-20.  However, the ALJ reasonably found Plaintiff's activities, including driving for up

to 90 minutes at a time and caring for 11 animals, were inconsistent with a claim of

disabling limitations.  This was a clear and convincing reason, supported by

substantial evidence, to reject Plaintiff's symptom claims.

### 3. Lack of Treatment

The ALJ found Plaintiff's symptom claims are inconsistent with her lack of

treatment.  Tr. 27.  An unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn*, 495 F.3d at 638.  Evidence of

a claimant's self-limitation and lack of motivation to seek treatment are appropriate

considerations in determining the credibility of a claimant's subjective symptom

reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v.*

*Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering

why plaintiff was not seeking treatment).  When there is no evidence suggesting

that the failure to seek or participate in treatment is attributable to a mental

impairment rather than a personal preference, it is reasonable for the ALJ to

conclude that the level or frequency of treatment is inconsistent with the alleged

severity of complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence

suggests lack of mental health treatment is partly due to a claimant's mental health

condition, it may be inappropriate to consider a claimant's lack of mental health

ORDER - 29

1  treatment when evaluating the claimant's failure to participate in treatment.

2  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

3      The ALJ found that while Plaintiff alleges disabling mental health

4  symptoms, she has received very limited mental health treatment.  Tr. 26.  The

5  ALJ considered Plaintiff's explanation that she lacked insurance and transportation

6  for a period for time, but the ALJ noted Plaintiff routinely sought treatment for her

7  physical treatments and therefore found Plaintiff's explanation regarding her lack

8  of mental health treatment was not valid.  Plaintiff argues she sought counseling

9  and mental health medication, but as discussed *supra,* while Plaintiff has had

10  instances when she received counseling or medication management for a period of

11  time, Plaintiff has had longer periods when she did not receive treatment.  Plaintiff

12  further argues she avoided counseling to avoid thinking about her history of abuse,

13  however the records indicate Plaintiff was able to overcome her avoidance to

14  complete assignments when she did attend counseling.  Tr. 583.  On this record,

15  the ALJ reasonably concluded that Plaintiff's lack of treatment is not consistent

16  with Plaintiff's complaints of disabling symptoms.  This finding is supported by

17  substantial evidence and was a clear and convincing reason to discount Plaintiff's

18  symptoms complaints

19      Plaintiff contends the ALJ erred by not including limitations in the RFC that

20  account for Plaintiff's migraine triggers and symptoms.  ECF No. 14 at 12-13.  As

ORDER - 30

1  the ALJ gave clear and convincing to reject Plaintiff's symptom complaints, and

2  there was no objective evidence to support Plaintiff's reported frequency or

3  severity of headaches, as discussed *supra,* the ALJ did not error in crafting an RFC

4  that does not include limitations to account for Plaintiff's reported limitations due

5  to her headaches.  Plaintiff is not entitled to remand on these grounds.

6  **D. Record Development**

7      Plaintiff contends the ALJ erred in failing to order a psychological

8  consultative examination.  ECF No. 14 at 21.  The ALJ has an independent duty to

9  fully and fairly develop a record in order to make a fair determination as to

10 disability, even where, as here, the claimant is represented by counsel.  *Celaya v.*

11 *Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan*, 242 F.3d at

12 1150; *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  "Ambiguous evidence,

13 or the ALJ's own finding that the record is inadequate to allow for proper

14 evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

15 inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

16     "An ALJ is not required to order every medical evaluation that could

17 conceivably shed light on a claimant's condition, but rather just those that would

18 resolve ambiguities or inadequacies in the record."  *Lloyd v. Astrue*, No. C-11-

19 4902-EMC, 2013 WL 503389, at *5 (N.D. Cal. Feb. 8, 2013) (citing *Mayes v.*

20 *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  Plaintiff's disagreement with

ORDER - 31

the ALJ's conclusions does not make the record ambiguous or inadequate.  *See*

*Leitner v. Comm'r Soc. Sec.*, 361 F. App'x 876, 877 (9th Cir. 2010) (the "claimant

bears the burden" of establishing that symptoms interfere with his or her ability to

"perform basic work activities," and the ALJ, on that record, could make such a

determination) (citations omitted).

Plaintiff last attended a psychological consultative examination in

September 2016.  Tr. 550-54.  At the December 2018 hearing, Dr. Rubin opined a

more current psychological consultative examination would be helpful in

determining Plaintiff's present functioning.  Tr. 50.  Plaintiff's counsel requested

the ALJ order a psychological consultative examination.  Tr. 68.  The ALJ denied

the request, stating there was sufficient evidence in the record to make a

determination that Plaintiff is not disabled and that Plaintiff should seek full-time

employment.  Tr. 68.

The last full mental status examination in the record is from December

2017, when Plaintiff presented with an abnormal mental status after a suicide

attempt.  Tr. 630.  Plaintiff's mother reported the events were based solely on a

recent breakup.  Tr. 630-31.  At a follow-up appointment, Plaintiff had a flat affect,

poor eye contact and visible self-inflicted wounds on her wrist.  Tr. 699.  Plaintiff's

additional appointments through 2017 and the beginning of 2018 do not contain

mental status examinations though they also do not contain any objective evidence

1  of abnormal mental health findings. Tr. 686-96.  In January 2018, Plaintiff reported

2  her depression was not optimally controlled and she increased her medication on

3  her own.  Tr. 690.  In February 2018, Plaintiff reported improvement with her

4  medication increase though still not optimally controlled symptoms, but the

5  provider noted it had only been two weeks since the medication increase.  Tr. 686,

6  688.  Plaintiff was encouraged multiple times to follow through with her referral

7  for psychiatric care, Tr. 688, 692, and there is no evidence she did so.

8        While Plaintiff argues the record was inadequate to make a determination

9  and a consultative examination was necessary, the ALJ found there was sufficient

10  evidence on which to make a decision.  Plaintiff does not set forth an argument that

11  the evidence is ambiguous.  Although the last consultative examination took place

12  over a year prior to the hearing, and Plaintiff's most recent mental status

13  examination was abnormal, the records demonstrate improvement since the last

14  examination.  As discussed *supra,* Plaintiff reported improvement with medication

15  and she did not follow-up on a psychiatric referral despite multiple reminders to do

16  so.  The ALJ also had the opinions of the medical consultants and the medical

17  expert on which to base her opinion.  ECF No. 15 at 19 (citing Tr. 46-54, 80-82,

18  96-98).  As such, the ALJ did not error in declining to order a psychological

19  consultative examination.  Plaintiff is not entitled to remand on these grounds.

20

ORDER - 33

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED June 2, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34